# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARLON PEEK,** | **Civil Action No. 20-9747 (KSH)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

This matter has been opened to the Court by the government's motion to dismiss Marlon Peek's § 2255 petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (Civ. No. 20-9747, ECF No. 11) and the parties' related motions. Peek opposes the motion to dismiss in a pro se filing and through his habeas counsel. (ECF No. 14; Crim. No. 15-609, ECF No. 141.) The Court has considered the parties' arguments and the relevant record. For the reasons explained in this opinion, the Court denies the government's motion to dismiss and provisionally grants Peek's request for equitable tolling.

The Court also grants the government's motion for a limited waiver of attorney-client privilege with respect to Peek's ineffective assistance claims (ECF No. 41) and directs the government to file a full answer addressing the merits of Peek's ineffective assistance claims. The Court also permits Peek to file a reply brief through his habeas counsel.

The Court denies without prejudice Peek's motions to file a supplemental brief and to have his appointed counsel placed on standby or to proceed pro se. (ECF Nos. 39-40.) The Court also denies as moot Peek's motion to compel judgment on the motion to place his counsel on standby or proceed pro se. (ECF No. 46.)

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

Peek is serving a 17-year sentence for a series of bank robberies and carjackings he committed or attempted to commit in the spring of 2015. He is currently serving his sentence at Otisville FCI.[1]

### a.  The Competency Proceedings

At his arraignment on December 16, 2015, Peek made outlandish claims about his relationship with his appointed federal public defender ("first counsel"). (*See* ECF No. 67 Arraignment Tr. at 3:8-4:8.) The Court raised concerns about Peek's competency and ordered a competency evaluation pursuant to 18 U.S.C. §§ 4241, 4247. (*See* ECF No. 27.)

Peek was first evaluated at FMC Devens by Dr. Chad Tillbrook who concluded in his report that Peek was not currently competent to stand trial. (*See* ECF No. 59, ¶ 4.)

On June 9, 2016, the Court appointed Criminal Justice Act counsel ("second counsel") to represent Peek in place of first counsel. (ECF No. 41.)

The government requested a second competency evaluation, which the Court granted on September 23, 2016. (*See* ECF No. 44.) Dr. Samantha DiMisa at the Metropolitan Correctional

---

[1] *See* Federal Bureau of Prisons Inmate Locator, available at
https://www.bop.gov/locations/institutions/otv/ (last visited Nov. 20, 2023).

Center of New York evaluated Peek and concluded in her report that Peek was not currently competent to stand trial. (*See* ECF No. 44 at ¶ 7.)

Peek's second counsel requested a third competency evaluation without objection from the government, which the Court granted on July 18, 2017. (ECF No. 59.) As explained below, Dr. Oropeza found that Peek was likely malingering and competent to stand trial (or enter a plea).

The Court held the competency hearing on October 2, 2017, and heard testimony from the three psychologists who had examined Peek for competency, Dr. Tillbrook, Dr. DiMisa, and Dr. Oropeza. Peek was present in court throughout the competency hearing and was taking Lithium and Remeron.[2] (*See* ECF No. 62, Competency Hearing Tr. at 7-8.)

Dr. Oropeza met with Peek at various stages of his criminal proceedings and had the opportunity to evaluate Peek's interactions with second counsel. At the competency hearing, Dr. Oropeza testified, among other things, that "initially I was retained by . . . [Peek's first counsel], to assess his mental state at the time of the alleged offenses. I saw him in December 2015 and again in January 2016, for that purpose." (Competency Hearing Tr. at 135:18-21.) Dr. Oropeza then testified that he saw Peek approximately three times in 2017 (after second counsel had taken over Peek's representation) "for the purpose of [assessing] competency to stand trial." (*Id.* at 135:23-136:2.)

Dr. Oropeza also testified, "I think likely [Peek] was malingering." (*Id.* at 137:11-12.) On examination by government, Dr Oropeza stated that he administered two tests to Peek in late 2015

---

[2] Lithium is a mood stabilizer medication. *See* American Association of Psychiatric Pharmacists, *Medication Fact Sheet Lithium,* available at https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Lithium, last visited Nov. 20, 2023. Remeron is a brand name for Mirtazapine, which is an antidepressant medication. *See* NAMI.org, *Mirtazapine (Remeron)*, available at https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Mirtazapine-(Remeron) (last visited Nov. 20, 2023).

and early 2016 that gave invalid results, which may indicate exaggerating or making up symptoms. (*Id.* at 151:1-14.)

After considering the evaluators' reports, the parties' arguments, and all the testimony, this Court found Peek competent to stand trial on the record on December 13, 2017, and entered an order on December 27, 2017. (*See* Crim. No. 15-609, ECF Nos. 27, 61, 68, 69.)

### b. Peek Signs a Plea Agreement and Pleads Guilty

Peek signed a plea agreement on February 12, 2018. (ECF No. 75, Plea Agreement.) Peek pleaded guilty to (i) seven counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2; (ii) one count of attempted bank robbery with a dangerous weapon in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2; (iii) one count of carjacking in violation of 18 U.S.C. §§ 2119(1) and 2; (iv) three counts of attempted carjacking in violation of 18 U.S.C. §§ 2119(1) and 2; (v) one count of use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and (vi) one count of forced accompaniment in attempt to avoid apprehension in violation of 18 U.S.C. §§ 2113(e) and 2. (ECF No. 84, Amended Judgment.)

At the plea hearing, which took place on March 19, 2018, the Court noted that Peek had been tested and evaluated for mental competency. (ECF No. 94, Plea Tr. at 5-6.) Peek reported that he was taking Lithium and Risperdal (Risperidone)[3] twice a day. (*Id.* at 6:17-7:2.) He stated that the medications were helping him and that he "was able to understand the proceedings even though [he was] on medication." (*Id.* at 7:5-9.) Peek confirmed that he fully discussed the charges and the case with second counsel, that he was "satisfied with [second counsel's], representation,

---

[3] According to the American Association of Psychiatric Pharmacists, Risperidone (brand name Risperdol) is a second-generation antipsychotic or atypical antipsychotic used to treat schizophrenia. *See Medication Fact Sheet Risperidone*, available at https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Risperidone-(Risperdal) (last visited Nov. 20, 2023).

and advice" and that he had reviewed the plea agreement with [second counsel].  (*Id.* at 7:15-20, 8:12-14.) The Government set forth the terms of the plea agreement at length. (*Id.* 8-17.) The Court checked with Peek repeatedly to confirm that he understood. He stated that he did, including that he was pleading guilty to crimes that collectively carried a mandatory minimum of 17 years' imprisonment, advisory guidelines suggesting a sentence potentially greater than 20 years' imprisonment, and a statutory maximum of life in prison. (*Id*. 11:19-21, 12:23-13:7, 15:13-17:16, 32:24-33:1, 33-36, 46:8-15.) Peek reaffirmed at the end of the recitation of the plea agreement's terms that he had signed it and discussed it with second counsel. Peek stated that he had discussed the plea agreement with second counsel thoroughly, that she had explained it to him, that he had asked her questions about the agreement, and she had answered them, that he understood what was happening, that he was there to enter a guilty plea, and that that was a big decision. (*Id.* at 17-21, 30.) Peek also stated that he had no questions for his counsel or the Court at that time. (*Id.* at 19:13-15, 28:22-29:3.) Peek averred that he was pleading guilty because he was in fact guilty, and that he was hoping to get the mandatory minimum sentence but understood that he might not. (*Id.* 36:20-38:4.) He further stated that he believed the plea agreement was a fair deal, that he had discussed it with second counsel, and that he had faith in her. (*Id.* at 38:5-12.) Peek also stated that he understood that in pleading guilty he was giving up his right to a jury trial and all its attendant rights, including to present evidence, or not present evidence, at that trial. (*Id.* at 39:15-41:6.) Peek also acknowledged that he had given up his right to appeal or attack his sentence under certain circumstances but that he was not precluded from "challenging the competency and/or effective representation of [his] attorney." (*Id.* at 45:16-22.)

After Peek admitted to the factual basis for his guilty plea, this Court found that "he is fully competent and capable of entering an informed plea based upon his answers, his demeanor, and

the types of questions that were asked of him. I find that he is aware of the nature of the charges. He is aware of the consequences of pleading guilty. And his plea of guilty is knowing and voluntary." (*Id.* at 64:11-17.) The Court accepted Peek's guilty plea.

The Court sentenced Peek on August 10, 2018, to 17 years' imprisonment, which was the mandatory minimum sentence under the statutes of conviction, followed by five years of supervised release. (ECF No. 96, Sentencing Tr.) Second counsel obtained an additional psychological examination of Peek by Dr. Catherine Barber in mitigation of sentencing, on which this Court relied in determining the sentence. (Sentencing Tr. at 8, 13, 22, 23, 26.) As part of her sentencing presentation, second counsel also noted that Peek had earned his GED while in federal pretrial detention, emphasizing how difficult that is with all the "distractions" in a county jail. (*Id.* 5:23-6:1, 11:10-14.) This Court granted Peek a variance down to the mandatory minimum, based in part on a finding that Peek was under the influence of alcohol and drug use and suffering from some degree of mental illness when he engaged in his crimes, as well as on the Court's observation that Peek had been able to form a productive working relationship with second counsel.[4] (*See id.* at 23-26.)

The Court entered an Amended Judgment on August 17, 2018. (ECF Nos. 83, 84.) Peek did not file a direct appeal.

### a. Peek Files his Original § 2255 Petition Approximately 11 Months Late

On or about July 23, 2020, Peek filed his original § 2255 petition pro se and raised two claims of ineffective assistance of counsel against his second counsel. (Civ. No. 20-9747, ECF No.

---

[4] Per the parties' plea agreement, the United States also moved to dismiss Counts Twelve, Fourteen, and Sixteen of the Indictment, and the Court granted dismissal of those charges. (*Id.* at 36.)

1.) He alleged that that his second counsel erred in retaining Dr. Oropeza to evaluate him and also failed to investigate and pursue an insanity defense.[5] (*Id.* at 4-8.)

With leave of Court, the government filed a motion to dismiss Peek's § 2255 petition as untimely on June 1, 2021. (*Id.*, ECF Nos. 6-7, 11.) Peek opposed the motion to dismiss and argued that he is entitled to equitable tolling or a hearing on the issue. (*Id.*, ECF No. 14.). The parties also filed additional briefing. (*Id.*, ECF Nos. 18-19.)

**b.  Peek's Allegations and Evidence in Support of Equitable Tolling**

Peek contends that at the time of his plea and sentencing, he was in "delusional state of mind." (ECF No. 14 at 4.)  Peek further alleges that he answered the questions from the Court in the manner he and second counsel "rehearsed beforehand[.]" (*Id.*) Peek acknowledges that he was aware that Dr. Oropezo had interviewed him on at least two prior occasions before being retained by second counsel, but he contends that he is not an attorney and only has a tenth-grade education. (*Id.* at 4-5.) Peek also alleges that he was taking several medications to treat depression and a delusional disorder. (*Id.* at 5.)

According to Peek, his medications were suddenly changed by the Bureau of Prisons ("BOP') in September 2018, and prison officials did not consult him about that change. (*Id.*) The change resulted in "very serious adverse side effects." (*Id.*) Peek alleges that he experienced the following side effects from his mental health medications:

> Mr. Peek experienced excruciating headaches, loss of appetite, [and] extreme tiredness. The medicine would render [Peek] nearly unconscious or in an incompacitated [sic] state. Peek would literally fall asleep all day from 6:30 AM-11:45 AM, 12:30 PM-8:30 PM.
>
> Mr. Peek literally remained this way until around March 2020.

---

[5] Peek also alleges in passing that second counsel failed to uncover his history of sexual abuse or inform the Court about it. He appears to allege that he would have received a lower sentence if his second counsel had provided this information to the Court.

(*Id.*)

Peek further alleges that he discontinued his mental health medications in March 2019 against the advice of his family and medical staff due to the severe side effects described above and because he lacked insight about his condition and believed that his mental health had significantly improved. (*See id.*) Peek further contends that he attempted to prepare his § 2255 petition in July 2019, but he was unable to complete it due to his mental illness.  (*Id.* at 6.)

In his reply brief, Peek also states the following:

> Mr. Peek's inability to engage in abstract reasoning necessary to understand basic legal concepts, combined with his psychiatric disorders, along with the various different side effects derived from the many different medications which Mr. Peek was taking made it virtually impossible for him to file or seek assistance in filing a habeas petition between August 2018-March 2020.

(ECF No. 19 at 2.) Peek further claims he was unable to manage his affairs during this same time period and was having "psychotic episodes." (*Id.*) He contends that he still suffers from severe depression and also suffers from "long haul" COVID-19 symptoms. (*Id.*)

In his opposition brief, Peek also alleges that the COVID-19 pandemic, which began in mid-March 2020, caused the prison to operate under 24-hour lockdowns, and these lockdowns prevented him from completing and filing his § 2255 petition until July 23, 2020. (ECF No. 14 at 6.)

To support the severity of his mental illness, Peek relies on Dr. DiMisa's report,[6] dated November 29, 2016, which diagnosed him with Delusional Disorder, Persistent Depressive Disorder, and Antisocial Personality Disorder. (ECF No. 9, Peek's Exhibit A.)

---

[6] As noted above, Dr. DiMisa was one of the three psychologists who evaluated Peek for competency prior to his guilty plea.

Peek also provides signed letters from two inmates at FCI Cumberland. Inmate George Owens describes Peek as being in a "zombie state" and sitting in a chair "drooling" when he arrived at FCI Cumberland on September 25, 2018. (ECF No. 14-2, Peek's Exhibit B at 2.) Inmate Philip Whitehurst similarly describes Peek as "incoherent" and "unable to move around or do anything" when he arrived at the facility on September 25, 2018. (*Id.*)

Peek and the government have both provided medical records from Essex County Correctional Facility showing that Peek was prescribed Risperidone, Lithium, and Remeron while he was incarcerated there. (Government's Exhibit E, Medical Records at 132; *see also* Peek's Exhibit B.)

### c.  The Bureau of Prison Medical Records

The government also provides Peek's BOP medical records for the relevant time period. The medical records indicate that Peek was prescribed Risperidone and Lithium on September 12, 2018, while he was housed at FTC Oklahoma City and presumably in transit to FCI Cumberland in Maryland. (*See* Medical Records at 136; *see also id.* at 128 (listing September 11, 2018 as Peek's departure date from ECCF and September 21, 2018 as the date Peek was medically cleared for transfer from FTC Oklahoma City).) Peek's medical records also include BOP consent forms to take Risperidone, Lithium, and Remeron, which Peek signed and dated on September 24, 2018, as well as a consent form to take Fluoxetine (Prozac),[7] which Peek signed and dated on September 25, 2018.[8] (Medical Records at 137-140.)

_____

[7] Fluoxetine (brand name Prozac) is used to treat depression and is a type of selective serotonin reuptake inhibitor ("SSRI"). *See* NAMI.org, *Fluoxetine (Prozac)*, available at https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Fluoxetine-(Prozac), last visited Nov. 20, 2023.

[8] The government notes that the clinical director of FCI Cumberland signed each form, certifying his or her "opinion that this patient understands the proposed treatment and **is competent** to give consent." (*Id.* (emphasis in original).) (The forms had a separate line where the clinician could

Upon arrival at FCI Cumberland, Peek had a prescription for Lithium, but on or about September 25, 2018, the Lithium was discontinued. (Medical Records at 49.) That day, Dr. Mohamed Moubarek saw Peek for a chronic care evaluation and wrote that "Patient was DX with Depression with psychotic episodes, doing well on current meds." (*See id.* at 27, 29 (stating "Will keep on the same does of meds").) On September 26, 2018, Dr. Moubarek increased Peek's Risperidone from 2mg once a day to 2mg twice a day and the "Indication" listed is "Schizoaffective disorder and Delusional Disorder." (Medical Records at 25.) On September 25, 2018, Peek was also prescribed 20mg of Fluoxetine once daily. (*See id.* at 48.)

Approximately five months later, on February 21, 2019, a "medication reconciliation encounter" was performed by Kristi Crites, CRNP, who noted the following: "Noncompliance with medication—MH. Will discontinue and schedule for follow up." (Medical Records at 19.) On February 25, 2019, Crites renewed Peek's Fluoxetine and wrote the following note: "Inmate wishes to continue the Prozac. It is hand carry. He does not want to take the Risperdal." (*Id.* at 17.) On March 11, 2019, Peek visited Crites to discuss discontinuing the Risperdal, and she wrote the following note:

> Inmate here to discuss the discontinuation of his Risperdal due to noncompliance. Inmate states he is doing well on just the Prozac. He is happy that is now hand carry because he wasn't compliant when it was pill line. Denies SI/HI/Hearing Voices. He is aware that if he starts to have a MH decline that he needs to go to speak with psychology to have this addressed.

(*Id.* at 15.)

---

have indicated an opinion that Peek was not competent to give consent, but the clinician did not do so.)

At a subsequent visit on August 8, 2019, Crites discontinued Peek's Fluoxetine and wrote that Peek stated that "he has been feeling well and he hasn't been taking it." (Medical Records at 5; *see id.* at 7 (listing "Patient Refused" as the reason for discontinuing Fluoxetine).)

On June 26, 2020, Dr. Moubarek saw Peek at a chronic care visit and wrote the following note:

> Patient was given the DX of Persistent Depressive Disorder—In Full Remission by Cumberland psychologist, for which he is not taking MH medication and hasn't been for awhile. Denies SI, HI, Hearing Voices. States that he doesn't feel like he needs meds[.] [H]e doesn't want to be on any at this time and he is doing well without meds[.] [H]e is aware that is he feels he might need[] to restart medication, he needs to notify his h/s via copout to have it addressed.

(Exhibit F, Medical Records 2 at 2; *see also id.* at 6.)

### d. Peek Seeks to Amend his § 2255 Petition Based on *United States v. Taylor*, 142 S. Ct. 2015 (2022)

On June 28, 2022, Peek filed a letter request on the criminal docket to amend his § 2255 motion based on the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022) (holding that attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause of statutory definition of crime of violence). (*See* Crim. No. 15-609, ECF No. 130.) Peek also sought appointment of counsel. (*Id.*)

On July 6, 2022, the Court appointed habeas counsel to represent Peek and directed the parties to provide briefing on Peek's *Taylor* claim. (*Id.* at ECF No. 132, 133.) The parties concluded that briefing on November 22, 2022. (*See* Civ. No. 20-9747, ECF Nos. 20, 22, 23, 29; *see also* Crim. No. 15-609, ECF No. 141.) Habeas counsel also addressed Peek's arguments for equitable tolling in her sur reply.[9] (*See* Crim. No. 15-609, ECF No. 141.) On December 1, 2022,

---

[9] The Court considers these arguments in addressing the government's motion to dismiss.

the Court appointed habeas counsel to represent Peek in his § 2255 proceedings. (Civ. No. 20-9747, ECF No. 30.)

On May 8, 2023, Peek filed a pro se motion to compel judgment on his ineffective assistance claims. (ECF No. 32.) The Court denied that motion, finding that the Sixth Amendment does not require the Court to permit hybrid representation and that hybrid representation was equally disfavored in civil proceedings. (ECF No. 33.) Noting that habeas counsel had addressed only Peek's equitable tolling arguments, the Court provided her with 45 days to submit a supplemental brief addressing the merits of Peek's ineffective assistance claims, if warranted, and permitted the government to file a reply brief within 30 days.

Habeas counsel wrote to the Court on June 21, 2023 that "the defense has determined not to supplement the briefing done to date by Mr. Peek on his § 2255 motion." Habeas counsel noted, however, that the government had not addressed the merits of Peek's ineffective assistance claims and reserved the right to file a reply to the government's answer if the Court denied the government's motion to dismiss. (ECF No. 36 at 2.)

Peek then filed letter motions seeking an extension of time to file a supplemental brief and place appointed counsel on standby or permit him to proceed pro se. (ECF No. 39, 40). In response to these motions, the government filed a motion for an Order finding a limited waiver of attorney-client privilege (if the Court denied its motion to dismiss), and Peek filed an opposition brief. (ECF Nos. 41, 44.) In light of Peek's request to place her on standby, habeas counsel also wrote to the Court regarding whether she should continue to represent Peek in his § 2255 claims against his second attorney. (ECF No. 43.) Habeas counsel noted, however, that she does not wish to withdraw and believes that Peek's *Taylor* claim has merit. (*Id.*)

## II.   <u>DISCUSSION</u>

The Court first addresses the government's motion to dismiss Peek's ineffective assistance claims as untimely and Peek's requests for equitable tolling or a hearing on the issue. The Court also resolves the parties' related motions.

### a.   The Motion to Dismiss

A court may dismiss a section 2255 motion where the record shows conclusively that the movant is not entitled to relief. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). In considering a Section 2255 petition, the "district court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (internal quotation omitted). The district court may, however, dispose of "vague and conclusory allegations" contained in a Section 2255 petition without further investigation. *Id.* at 710 (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). In addition, "a petition for habeas corpus prepared by a prisoner without the aid of counsel must be read with a measure of tolerance. However, he should not be relieved of the statutory requirement to state the facts upon which his claim to relief is predicated." *Wade v. Yeager*, 377 F.2d 841, 846 (3d Cir.1967).

Under AEDPA, § 2255 motions filed by federal prisoners are generally subject to a one-year limitations period. *See* 28 U.S.C. § 2255(f). There are four possible start dates for the limitations period, and Section 2255(f) provides, in relevant part:

> The limitation period shall run from the latest of–
> (1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

In the usual case, if a criminal defendant "does not pursue a timely direct appeal to the court of appeals," his or her conviction and sentence become "final" within the meaning of § 2255(f)(1), and the one-year limitation period begins to run "on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Here, the Court sentenced Peek on August 10, 2018, and entered an Amended Judgment on August 17, 2018. (Crim. No. 15-609, ECF No. 83, 84.) Peek did not appeal, and his judgment of conviction became final 14 days later on August 31, 2018. *See* Crim. R. App. P. 4(b)(1)(A)(i). As such, the one-year period expired on August 31, 2019. Peek submitted his § 2255 motion to prison officials for filing on or about July 23, 2020, nearly eleven months after the one-year period expired.

Although Peek's § 2255 motion is untimely under § 2255(f)(1), the one-year statute of limitations for § 2255 cases is subject to equitable tolling.[10] *See Miller v. New Jersey State Dept. of Corrections,* 145 F.3d 616, 619 (3d Cir. 1998) (holding "that the one year period of limitation for § 2255 cases is also subject to equitable tolling"); *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). Equitable tolling applies

---

[10] The government also argues that Peek's ineffective assistance claims are untimely under § 2255(f)(4). Because the Court provisionally grants Peek's request for equitable tolling, it need not address this issue.

when a petitioner has been prevented in "some extraordinary way" from timely filing and has "exercised reasonable diligence" in bringing the claims. *Nara v. Frank*, 264 F.3d 310, 319 (3d Cir. 2001), overruled in part on other grounds by *Carey v. Saffold*, 536 U.S. 214 (2002). The petitioner bears the burden of establishing both extraordinary circumstances and reasonable diligence. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). There are no bright lines for determining eligibility. *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Although this equitable doctrine is used sparingly, the assessment is flexible and the particular circumstances of the petitioner must be taken into account. *Id.*

The government argues that Peek is not entitled to equitable tolling because his BOP medical records conclusively rebut his claim that he could not timely file his § 2255 petition due to the severity of his mental illness and/or changes to his mental health medications. Habeas counsel argues that Peek's persistent and significant mental health issues coupled with the COVID-19 pandemic amounted to extraordinary circumstances and that Peek exercised reasonable diligence in the face of those challenges. Habeas counsel further argues that Peek is entitled to equitable tolling for the 11-month delay in filing his § 2255 petition.[11]

Under Third Circuit law, "mental incompetence is not a per se reason to toll a statute of limitations," and "must somehow have affected the petitioner's ability to file a timely habeas petition." *Nara*, 264 F.3d at 320. In *Champney v. Sec'y DOC*, 469 F. App'x 113, 117–18 (3d Cir. 2012) (nonprecedential), the Third Circuit provided a "non-exhaustive list of factors to consider" in determining whether mental illness constitutes an extraordinary circumstance for equitable tolling purposes. The *Champney* factors include:

---

[11] Alternatively, Peek and habeas counsel argue that Peek should get a hearing on the issue of equitable tolling.

(1) whether the petitioner was adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory period; (2) whether the petitioner was institutionalized for his mental impairment; (3) whether the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) whether the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications.

*Id.* at 118 (cleaned up).

In *Wallace v. Mahanoy*, 2 F.4th 133, 136 (3d Cir. 2021), the Third Circuit considered whether a mentally ill petitioner faced extraordinary circumstances sufficient to excuse a "decade-plus delay" in filing his habeas petition.[12] The circuit court reaffirmed that to warrant equitable tolling, a petitioner's "alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition," though he need not show that it made his filing impossible. *Id.* at 144, 145 n.18 (internal quotations omitted). "[T]he relevant inquiry for purposes of assessing extraordinary circumstances is how severe an obstacle the circumstance

creates with respect to meeting AEDPA's one-year deadline." *Id.* at 144 (internal quotations and alteration omitted). The Third Circuit also declined to adopt the *Champney* factors and described them as a "starting point" to establish that the petitioner genuinely suffers from mental illness. *Id.* at 144-45. It clarified that courts must consider "the totality of the circumstances in determining whether the record supports [the petitioner's] claim that he had no periods of sufficiently good health . . . during which time he could have pursued a federal habeas petition." *Id.* at 145.

The Third Circuit then assessed Wallace's medical records and other record evidence and determined that Wallace genuinely suffered from mental illness, but he also had "periods of relative stability" where he was "capable of pursuing legal remedies[.]" *Id.* at 145. The Court noted

---

[12] Wallace's petition was due on January 7, 2002, but the petitioner "contend[ed] that his mental illness so hampered his ability to think clearly that he could not reasonably have been expected to file for federal habeas relief at any time prior to September 2015." *Id.* at 136.

in particular that "Wallace was able in 2013 to pursue state post-conviction relief—despite his many medications and his claimed decline in mental health."[13] *Id.* at 148.

Here, there is no real debate that Peek also suffers from some degree of mental illness, and the record as a whole suggests that he, like the petitioner in *Wallace*, has likely experienced periods of poor mental health followed by periods of relative stability. Peek filed his petition approximately 11 months late, which is a much shorter delay than the decade-long lapse considered in *Wallace*. At issue is whether the record sufficiently supports Peek's claim that he experienced no periods of sufficiently good mental health from September 2018 through March 2020 during which he could have filed his § 2255 petition.[14]

The Court is mindful that Peek was proceeding pro se at the time the government filed its motion to dismiss, and the Court liberally construes his submissions. Peek contends that his medications were suddenly changed by the BOP in September 2018, and that prison officials did not consult him about that change, which resulted in serious side effects that essentially incapacitated him. Peek's medical records appear to confirm that the medical providers at the BOP discontinued Peek's mood stabilizer Lithium, increased his dose of the antipsychotic medication Risperidone from once daily to twice daily, and began prescribing him Fluoxetine. Peek's allegations that he stopped taking Risperidone in March 2019 and stopped taking Fluoxetine in August 2019 are also largely consistent with his medical records.

---

[13] The Court also rejected Wallace's claim that a hearing was required, finding that "[t]here is substantial documentary evidence in the record" that supported the court's "conclusion that Wallace's mental illness did not pose a sufficiently severe obstacle to his pursuit of legal remedies for a period of several years." *Id.*

[14] As discussed below, Peek also contends that he was also unable to file his § 2255 petition during the first four months of the Covid-19 pandemic.

Peek also claims, however, that he discontinued these medication due to severe side effects and remained incapacitated by those side effects until March 2020. He also contends that he discontinued his mental health medications because he had poor insight into his condition and falsely believed that his mental health had significantly improved. He alleges that his mental health declined and he had psychotic episodes after discontinuing his mental health medications. Finally, he contends that he began his § 2255 petition in July 2019 but could not complete it until a year later due to his poor mental health.

The Government focuses on the fact that Peek discontinued the antipsychotic medication Risperidone in March 2019, when he still had five months left to file a timely § 2255 petition. Peek also discontinued Fluoxetine in August 2019, close to when his limitations period expired. The Court, however, is not a psychologist or a pharmacist and is unable to determine whether Peek experienced debilitating side effects from his mental health medications or whether those side effects ceased at the time he discontinued the medications, shortly thereafter, or many months later, as Peek claims.

The government also points to several statements Peek made to his medical providers during the relevant timeframe. Shortly after Peek discontinued the Risperidone, he told his provider he was doing well without it. Similarly, he stated in August 2019 that he did not need Prozac. In June 2020, a month before he filed his habeas petition, Peek told his medical provider that he was doing well without either medication. Peek also appears to deny having a mental health relapse. In addition, Peek's medical records do not document the side effects he claims he experienced or a decline in his mental health after discontinuing his medications. As habeas counsel argues, however, Peek's isolated statements to his medical providers that he was doing fine without the medications should be viewed with caution in light of Peek's admission that he

lacked insight about his mental illness and his need for mental health medications. (*See* Crim. No. 15-609, ECF No. 141, Sur-Reply Brief at 6.)

The Court also notes that the government does not provide any other evidence that Peek was capable of filing his § 2255 petition after he discontinued Risperidone in March 2019 and Fluoxetine in August 2019. For instance, there is no evidence before the Court, as there was in *Wallace*, that Peek assisted with other legal matters after discontinuing his mental health medications. Although Peek apparently earned his GED prior to sentencing at Essex County Correctional Facility, Peek claims that his mental health rapidly declined after his transfer to the BOP due to changes to his mental health medications and his later decision to discontinue those medications. The government has not pointed to any evidence that Peek took additional educational courses, held a prison job, or engaged in other activities after his transfer to the BOP that would indicate that he was capable of filing his § 2255 petition prior to July 23, 2020.

Ultimately, the Court finds that Peek's medical records from the BOP do not conclusively rebut Peek's contentions that he was significantly impaired by his mental illness and changes to his mental health medications from September 2018 through March 2020.

Peek did not file his § 2255 petition until July 23, 2020, and he contends that he was hampered by the 24-hour lockdowns caused by the COVID-19 pandemic. The government focuses on Peek's mental health and does not directly dispute that the COVID-19 pandemic resulted in protracted lockdowns or argue that Peek could have filed his habeas petition during the first four months of the COVID-19 pandemic. "Courts have concluded that the COVID-19 pandemic 'could – in certain circumstances – conceivably warrant equitable tolling.'" *United States v. Henry*, No. 20-cv-1821, 2020 WL 7332657, at *3 (W.D. Pa. Dec. 14, 2020) (quoting *United States v. Haro*, No. 8:18CR66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020)). This argument is more

compelling during the very early months of the COVID-19 pandemic. *See Dunn v. Baca*, No. 3:19-cv-00702, 2020 WL 2525772, at *1 (D. Nev. May 18, 2020) (finding that under the extraordinary circumstances of the COVID-19 pandemic, equitable tolling for a fixed time until August 10, 2020, is warranted); *Monroe v. United States*, No. 4:17-cr-11, 2020 WL 6547646, at *3 (E.D.V.A. Nov. 6, 2020) ("The Court recognizes that Petitioner may have experienced issues in attempting to timely file the present motion while facing the impact of a global pandemic. Accordingly, the Court will toll the filing deadline ... as the circumstances surrounding the pandemic were both extraordinary and beyond Petitioner's control."); *see also* Meghan L. Downey, *Extraordinary Circumstances and Extraordinary Writs: Equitable Tolling During the COVID-19 Pandemic and Beyond*, 27 Berkeley J. Crim. L. 31, 68 (2022) (explaining that the lockdowns prisoners "experienced from April to June of 2020 [were] extensive, facility-wide, and brought about by a global pandemic that wrought havoc on the U.S. legal system").

Although COVID-19 lockdowns and restrictions alone may not warrant tolling, the Court must assess the record as a whole under the totality of the circumstances. *See*, *e.g.*, *Ross v. Varano*, 712 F.3d at 803 ("consider[ing] the record as a whole," including the conduct of petitioner's attorney, the petitioner's "limited intellectual ability and education," his "history of poor mental health," and the fact that he was "an incarcerated prisoner with limited resources at his disposal who was moved among facilities within the prison system"). Here, Peek's circumstances include his mental illness, his claims about the debilitating side effects of his mental health medications, his alleged mental health decline after discontinuing those medications, and the alleged challenges of filing his habeas petition during the first quarter of the COVID-19 pandemic. These facts, which the Court must credit at the motion to dismiss stage, are sufficient to establish extraordinary circumstances.

To grant equitable tolling, the Court must also be satisfied that Peek pursued his rights diligently. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418–19 (2005). "[T]he reasonable diligence showing that a petitioner must make to obtain equitable relief from the AEDPA statute of limitations is less than a showing of extraordinary diligence" or "Herculean effort" and must account for the particular characteristics of the petitioner. *See Ross*, 712 F.3d at 802 (explaining that petitioner was an incarcerated lay person with limited cognitive abilities). In finding that Peek exercised reasonable diligence, the Court considers and credits the same facts outlined above.[15]

In sum, the Court finds that Peek has provided sufficient facts and evidence that extraordinary circumstances prevented him from timely filing his § 2255 petition and that he acted with reasonable diligence in filing his petition on or about July 23, 2020.  In light of the age of this matter and the extensive briefing that has already occurred, the Court also determines that a hearing is unnecessary and unlikely to clarify the relevant issues. For these reasons, the Court denies the government's motion to dismiss the petition as untimely and provisionally grants Peek's request for equitable tolling.

### b.  The Related Motions

Having denied the government's motion to dismiss, the Court next considers its request for a limited waiver of attorney-client privilege and an extension of time to file the answer.  (ECF No. 41.) The Third Circuit has generally held that parties implicitly waive attorney-client privilege

---

[15] The Court also notes that this case is distinguishable from *Wallace*. There, the Third Circuit focused on a two-year period from 2013 through 2015 when the petitioner was able to pursue relief in state court despite his mental illness and held that petitioner's failure to file a protective habeas petition while his state court proceedings were pending "undermine[d] his diligence claim." In *Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004), the Third Circuit also denied a petitioner equitable tolling for lack of diligence, but *Schlueter* involved tolling for attorney error that the petitioner could have discovered through reasonable diligence. In making this finding, the Court specifically acknowledged that petitioner was incarcerated but had his parents' assistance in pursuing habeas relief. *See id.* at 75.

when they place the legal representation directly in issue. *See Emmanouil v. Roggio*, 499 F. App'x. 195, 201 (3d Cir. 2012); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999); *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996); *Rhone–Poulenc Rorer Inc. v. Home Indent. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Other circuits have explicitly held that when a petitioner "claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications." *United States v. Pinson*, 584 F.3d 972, 977–78 (10th Cir. 2009); *see also, e.g., In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974).

Following this authority, at least one court in this district has held that "implicit waiver of attorney-client privilege is limited, however, to attorney-client communications that are necessary for the resolution of the claims at hand." *Ragbir v. United States*, 2018 WL 1871460, at *3 (Apr. 19, 2018, McNulty, J.) (citing *Pinson*, 584 F.3d at 978 ("[W]hen a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim."); *Bittaker*, 331 F.3d at 720 ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it."). Courts have also found that the implicit waiver of privilege generally applies equally to attorney-client privilege and work-product privilege. *See Bittaker*, 331 F.3d at 722 n.6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)); *Muhammad v. United States*, No. 15–6845, 2016 WL 1243617, at *1 (D.N.J. Mar. 28, 2016); *Ragbir*, 2018 WL 1871460, at *3.

The government's proposed order tracks the correct standard and seeks a limited waiver of attorney-client privilege with respect to communications that are reasonably necessary to prove Peek's ineffective assistance claims. (*See* ECF No. 41-2 at 2.) Therefore, the Court grants the government's request for a limited waiver of attorney-client privilege and directs the government to file a full answer within 60 days.

Having denied the government's motion to dismiss the ineffective assistance claims as untimely, the Court will also deny without prejudice Peek's motion to file a supplemental brief on the merits of the ineffective assistance claims. (ECF No. 39.) Instead, the Court permits Peek's habeas counsel to file a reply to the government's answer.[16] The Court also directs the parties to update their briefing on Peek's claim under *United States v. Taylor*, 142 S. Ct. 2015 (2022), and provide any new precedential or persuasive authority.

The Court also denies without prejudice Peek's request to have appointed counsel act as standby counsel, or to proceed pro se. (ECF No. 40.) There is no right to counsel for collateral proceedings. *See Bevard v. Bergami*, No. 21-2410, 2021 WL 2118340, at *1 (D.N.J. May 25, 2021) (Bumb, J.) (citing *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991)). Here, the Court appointed counsel for Peek pursuant to 18 U.S.C. § 3006A because his *Taylor* claim has potential merit and involves complex and novel issues of law. Thus far, Peek's appointed counsel has performed ably on Peek's behalf, and it would not benefit the Court (or Peek) to permit Peek to proceed pro se or with stand by counsel with respect to his *Taylor* claim or his ineffective

---

[16] Peek's habeas counsel expressed a willingness to file a reply if this Court directed the government to file an answer on the merits of Peek's ineffective assistance claims.

assistance claims. The Court also denies as moot Peek's motion to compel judgment on his motion to place his counsel on standby.[17] (ECF No. 46.)

### III.   <u>CONCLUSION</u>

For the reasons explained in this opinion, the Court denies the government's motion to dismiss Peek's ineffective assistance of counsel claims against second counsel and provisionally grants Peek's requests for equitable tolling. The Court grants the government's motion for a limited waiver of attorney-client privilege and directs the government to submit its answer within 60 days. Peek's habeas counsel may submit a reply brief responding to the government's answer. In their submissions, the parties shall also update their briefing on the *Taylor* claim. The Court also denies without prejudice Peek's request to have appointed counsel act as standby counsel, or to proceed pro se and denies as moot his motion to compel judgment on his motion to proceed standby or pro se. An appropriate Order follows.[18]


_s/Katharine S. Hayden_____
KATHARINE S. HAYDEN
United States District Judge


DATED: November 22, 2023

---

[17] On November 4, 2023, Peek submitted a petition for a writ of mandamus asking the Third Circuit to direct this Court to rule on his motion to place habeas counsel on standby or proceed pro se. The Clerk of the Court docketed a copy of Peek's mandamus petition in this action on November 16, 2023. (ECF No. 48.)

[18] On June 27, 2023, Peek signed up to receive electronic notifications. (ECF No. 42.) On October 17, 2023, Peek wrote to the Clerk of the Court requesting to receive service by mail. (ECF No. 47.) The Court will direct the Clerk of the Court to send copies of this Opinion and the accompanying Order to Peek at FCI Otisville. Habeas counsel shall continue to receive electronic notifications consistent with this Court's denial of Peek's motion to relieve her or place her on a different status.