**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARLON PEEK,** | **Civil Action No. 20-9747 (KSH)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

Marlon Peek,[1] who is represented by counsel, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that his conviction under 18 U.S.C. § 924(c) is invalid in light of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845, 860 (2022) (holding that attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause of 18 U.S.C. § 924(c)). The Court has considered the parties' arguments, including their supplemental briefing and authority. *See* Crim. No. 15-609, ECF Nos. 130, 135, 137, 138, 139, 141; Civ. No. 20-9747, ECF Nos. 20, 22, 23, 29, 56, 58, 63, 67, 69. For the reasons below, the Court denies the motion but grants a certificate of appealability.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Peek is serving a 17-year sentence for a series of bank robberies and carjackings he committed or attempted to commit in the spring of 2015. He is currently serving his sentence at

---

[1] Peek recently changed his name to Malik Uhuru Mugabe (ECF No. 61). His conviction was entered under his prior name, and the Federal Bureau of Prisons Inmate locator still lists his name as Marlon Peek. To avoid confusion, this opinion uses the name listed on his judgment of conviction.

Fort Dix FCI.[2]

### a. The Competency Proceedings

At his arraignment on December 16, 2015, Peek made outlandish claims about his appointed federal public defender ("first counsel"). (*See* ECF No. 67 Arraignment Tr. at 3:8-4:8.) The Court ordered a competency evaluation pursuant to 18 U.S.C. §§ 4241, 4247 (*see* ECF No. 27), and on June 9, 2016, the Court appointed Criminal Justice Act counsel ("second counsel") to represent Peek in place of first counsel. (ECF No. 41.)

The Court held a competency hearing on October 2, 2017, and heard testimony from three psychologists who had examined Peek for competency. Peek was present in court throughout. (*See* ECF No. 62, Competency Hearing Tr. at 7-8.) After considering the evaluators' reports, the parties' arguments, and all the testimony, this Court found Peek competent to stand trial on the record on December 13, 2017, and entered an order on December 27, 2017. (*See* Crim. No. 15-609, ECF Nos. 27, 61, 68, 69.)

### b. Peek Pleads Guilty and is Sentenced to 17 Years' Imprisonment

Peek signed a plea agreement on February 12, 2018. (ECF No. 75, Plea Agreement.) He pleaded guilty to (i) seven counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2; (ii) one count of attempted bank robbery with a dangerous weapon in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2; (iii) one count of carjacking in violation of 18 U.S.C. §§ 2119(1) and 2; (iv) three counts of attempted carjacking in violation of 18 U.S.C. §§ 2119(1) and 2; (v) one count of use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2;

---

[2] *See* Federal Bureau of Prisons Inmate Locator, available at https://www.bop.gov/locations/institutions/otv/ (last visited Dec. 17, 2024).

and (vi) one count of forced accompaniment in an attempt to avoid apprehension in violation of 18 U.S.C. §§ 2113(e) and 2. (ECF No. 84, Amended Judgment.)

At the plea hearing, which took place on March 19, 2018, the Court noted that Peek had been tested and evaluated for mental competency. (ECF No. 94, Plea Tr. at 5-6.) Peek reported that he was taking Lithium and Risperdal twice a day. (*Id.* at 6:17-7:2.) He stated that the medications were helping him and that he "was able to understand the proceedings even though [he was] on medication." (*Id.* at 7:5-9.) Peek confirmed that he fully discussed the charges and the case with second counsel, that he was "satisfied with [second counsel's] representation and advice," and that he had reviewed the plea agreement with [second counsel]. (*Id.* at 7:15-20, 8:12-14.)

The government set forth the terms of the plea agreement at length and reviewed the mandatory minimum sentences based on the forced accompaniment offense in Count 17 and the weapons offense in Counts 10. (*Id.* at 8-17.) The government explained that "Count 17 has a 10-year mandatory minimum and Count 10 has a mandatory consecutive seven-year minimum. So the sum of those brings us to the mandatory 17 years." (*Id.* at 10:10-13.) The Court checked with Peek repeatedly to confirm that he understood, and he confirmed he did, including that he was pleading guilty to crimes that collectively carried a mandatory minimum of 17 years' imprisonment, advisory guidelines suggesting a sentence potentially greater than 20 years' imprisonment, and a statutory maximum of life in prison. (*Id.* at 11:19-21, 12:23-13:7, 15:13-17:16, 32:24-33:1, 33-36, 46:8-15.) Peek averred that he was pleading guilty because he was in fact guilty, and that he was hoping to get the mandatory minimum sentence but understood that he might not. (*Id.* 36:20-38:4.) He further stated that he believed the plea agreement was a fair deal, that he had discussed it with second counsel, and that he had faith in her. (*Id.* at 38:5-12.) Peek

also stated that he understood that in pleading guilty he was giving up his right to a jury trial and all its attendant rights. (*Id.* at 39:15-41:6.)

At the plea hearing, the government summarized the elements of bank robbery with a dangerous weapon under 18 U.S.C. §§ 2213(a), (d), and the weapons offense under 18 U.S.C. § 924(c),

> As to Count 9, which charges a violation of 18 United States Code Section 2113(a), 2113(d) and 2, that's the attempted armed bank robbery on May 6, 2015.
>
> Elements are:
>
> One, the defendant took or attempted to take money that was in the care, custody or possession of a bank, from a bank employee or from a bank while others were present;
>
> Two, the defendant used force and violence or intimidation;
>
> Three, the defendant intentionally assaulted a particular person or put the life of that person in jeopardy by the use of a dangerous weapon or device while taking or attempting to take the money;
>
> And four, the deposits of the bank were then insured by the Federal Deposit Insurance Corporation.
>
> The elements of Count 10, which charges the use and carrying and brandishment of a firearm during the attempted bank robbery in violation of 18 United States Code Section 924(c)(1)(A)(ii) are as follows:
>
> First, the defendant committed the crime of attempted bank robbery as charged in Count 9;
>
> Two, during and in relation to the commission of such crime, the defendant knowingly used or carried a firearm;
>
> And three, the defendant used or carried the firearm during and in relation to the crime of attempted bank robbery where during and in relation to means the firearm must have had some purpose or effect with respect to the attempted bank

robbery.

> The firearm must have at least facilitated or had the potential of facilitating the attempted bank robbery;

> Four, in addition, for the seven-year mandatory minimum to apply, the Government must also prove that the defendant brandished a firearm and was involved in displaying the firearm to another person.

(*Id.* at 42:10-43:18.)

The Court then conducted a colloquy in which Peek provided a factual basis for the attempted bank robbery with a dangerous weapon and his use of a firearm at Bank of America on May 6, 2015 (Counts 9, 10),[3] as well as the three attempted carjackings (Counts 11, 13, 15) and the forced accompaniment (Count 17), which Peek committed while fleeing the scene:

> THE COURT: As to Counts 9 and 10 of the indictment, on or about May 6, 2015, did you enter a Bank of America located in Linden, New Jersey?

> THE DEFENDANT: Yes.

> THE COURT: While inside the Bank of America, did you write a note on a withdrawal or deposit slip?

> THE DEFENDANT: Yes.

> THE COURT: Did the note state in substance and in part, no dye pack, 100, large bills only?

> THE DEFENDANT: Yes.

> THE COURT: Did you point a gun directly at a teller,

---

[3] Peek also admitted committing the following unarmed bank robberies: the TD Bank robbery on March 17, 2015 (Count 1), the Magyar robbery on March 31, 2015 (Count 2), the Investor's Bank robbery on April 9, 2015 (Count 3), the Wells Fargo Bank robbery on April 14, 2015 (Count 4), the Unity Bank robbery on April 15, 2015 (Count 5), the PNC Bank robbery on April 21, 2015 (Count 6), and the TD Bank robbery also on April 21, 2015 (Count 8). (*Id.* at 47:1-56:8.) Peek also admitted to a carjacking that occurred between the two bank robberies on April 21, 2015. (Count 7). (*Id.* at 53:25-55:2.)

I am going to call that teller Victim 3, and present the note to Victim 3?

THE DEFENDANT: Yes.

THE COURT: Was the gun loaded?

THE DEFENDANT: Yes.

THE COURT: Did you intend for your words and actions To intimidate Victim 3?

THE DEFENDANT: Yes.

THE COURT: Did Victim 3 refuse to turn over any money?

THE DEFENDANT: Yes.

THE COURT: And did you flee? Did you run out of the Bank of America?

THE DEFENDANT: Yes.

THE COURT: Count 11.
As to Count 11, after you fled the Bank of America did you enter the parking lot in which the Bank of America was located?

THE DEFENDANT: Yes.

THE COURT: Did you approach Victim 4, who was sitting in Victim 4's car, which was a blue Ford Explorer?

THE DEFENDANT: Yes.

THE COURT: Did you attempt to take Victim 4's car From Victim 4?

THE DEFENDANT: Yes.

THE COURT: Specifically, did you approach the passenger side of Victim 4's car, state in substance and in part, Open the door, and point a gun through a crack in the window?

THE DEFENDANT: Yes.

THE COURT: Was the gun loaded?

THE DEFENDANT: Yes.

THE COURT: Did you intend for your words and actions to intimidate Victim 4?

THE DEFENDANT: Yes.

THE COURT: Did you intend to cause death or serious bodily injury to Victim 4?

THE DEFENDANT: Yes.

THE COURT: When Victim 4 did not respond, did you back away from Victim 4's car?

THE DEFENDANT: Yes.

THE COURT: We are moving to Count 13.
As to Count 13, after you backed away from Victim 4's car, did you approach Victim 5's car, which was a white Nissan Murano?

THE DEFENDANT: Yes.

THE COURT: Did you attempt to take Victim 5's car away from Victim 5?

THE DEFENDANT: Yes.

THE COURT: Specifically, did you enter Victim 5's car through the rear passenger side door?

THE DEFENDANT: Yes.
THE COURT: So you were in the back seat of the car?

THE DEFENDANT: Yes.

THE COURT: Did you hold a gun in Victim 5's direction?

THE DEFENDANT: Yes.

THE COURT: Was the gun loaded?

THE DEFENDANT: Yes.

THE COURT: Did you tell Victim 5 in substance and in part, Go on the highway, just get me out of here?

THE DEFENDANT: Yes.

THE COURT: Did Victim 5 attempt to start the car and the car would not start?

THE DEFENDANT: Yes.

THE COURT: Did Victim 5 tell you the car would not start?

THE DEFENDANT: Yes.

THE COURT: Did you respond, Put it in drive and let me do it?

THE DEFENDANT: Yes.

THE COURT: Did Victim 5 flee the car and scream in substance and in part that he or she was being robbed?

THE DEFENDANT: Yes.

THE COURT: Did you intend for your words and actions to intimidate Victim 5?

THE DEFENDANT: Yes.

THE COURT: Did you intend to cause death or serious bodily injury to Victim 5?

THE DEFENDANT: Yes.

THE COURT: Did you exit Victim 5's car?

THE DEFENDANT: Yes.

THE COURT: Count 15.
As to Count 15, after you exited Victim 5's car, did you approach Victim 6's car, which is a black Honda Pilot?

THE DEFENDANT: Yes.

THE COURT: Did you attempt to take Victim 6's car away from Victim 6?

THE DEFENDANT: Yes.

THE COURT: Specifically, did you bang on the passenger side door -- window, I'm sorry, of Victim 6's car with a gun while Victim 6 was waiting in a line of cars to exit the parking lot?

THE DEFENDANT: Yes.

THE COURT: Was the gun loaded?

THE DEFENDANT: Yes.

THE COURT: Did you then try to enter Victim 6's car?

THE DEFENDANT: Yes.

THE COURT: Did you intend for your words and actions to intimidate Victim 6?

THE DEFENDANT: Yes.

THE COURT: Did you intend to cause death or serious bodily injury to Victim 6?

THE DEFENDANT: Yes.

THE COURT: Did Victim 6 drive away?

THE DEFENDANT: Yes.

THE COURT: Count 17.
As to Count 17 of the indictment, after Victim 6 drove away, did you run across the road over a fence or a wall?

THE DEFENDANT: Yes.

THE COURT: And did you enter a warehouse?

THE DEFENDANT: Yes.

THE COURT: Inside the warehouse did you take a hostage, who we are going to call Victim 7?

THE DEFENDANT: Yes.

THE COURT: Did you hold a gun to Victim 7's head?

THE DEFENDANT: Yes.

THE COURT: Was the gun loaded?

THE DEFENDANT: Yes.

THE COURT: Around – I'm sorry.
While holding the gun to Victim 7's head, did you force Victim 7 to accompany you over several steps?

THE DEFENDANT: Yes.

THE COURT: Around that time did police officers start to arrive and order you to drop your gun?

THE DEFENDANT: Yes.

THE COURT: Did you drop your gun and surrender to the police?

THE DEFENDANT: Yes.

THE COURT: Now, two more questions as to all the counts we have been discussing.
As to all of them, did you take all of the above actions knowingly?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty to Counts 1 Through 11, Count 13, Count 15 and 17 of the indictment because in fact you are guilty of these crimes charged?

THE DEFENDANT: Yes.

THE COURT: Okay.

(*Id.* at 56:9-62:9.)

After Peek admitted to the factual basis for his guilty plea, this Court found that "he is fully competent and capable of entering an informed plea based upon his answers, his demeanor, and the types of questions that were asked of him. I find that he is aware of the nature of the charges. He is aware of the consequences of pleading guilty. And his plea of guilty is knowing and voluntary." (*Id.* at 64:11-17.) The Court accepted Peek's guilty plea.

On August 10, 2018, the Court sentenced Peek to 17 years' imprisonment, which was the mandatory minimum sentence under the statutes of conviction, followed by five years of supervised release. [4] (ECF No. 96, Sentencing Tr.) In so doing, the Court granted Peek a variance down to the mandatory minimum, based in part on a finding that Peek was under the influence of alcohol and drug use and suffering from some degree of mental illness when he engaged in his crimes, as well as on the Court's observation that Peek had been able to form a productive working relationship with second counsel. (*See id.* at 23-26.)

The Court entered an Amended Judgment on August 17, 2018. (ECF Nos. 83, 84.) Peek did not file a direct appeal.

### c.  Peek Files his Original § 2255 Motion

On or about July 23, 2020, Peek filed his original § 2255 petition pro se and raised two claims of ineffective assistance of counsel against his second counsel. (Civ. No. 20-9747, ECF No. 1.) He alleged that that his second counsel erred in retaining Dr. Orapeza to evaluate him for competency and also failed to investigate and pursue an insanity defense. (*Id.* at 4-8.)

With leave of Court, the government filed a motion to dismiss Peek's § 2255 petition as untimely on June 1, 2021. (*Id.*, ECF Nos. 6-7, 11.) Peek opposed the motion to dismiss and argued

---

[4] Per the parties' plea agreement, the United States also moved to dismiss Counts Twelve, Fourteen, and Sixteen of the Indictment, and the Court granted dismissal of those charges. (*Id.* at 36.)

that he was entitled to equitable tolling or a hearing on the issue. (*Id.*, ECF No. 14.). The parties also filed additional briefing. (*Id.*, ECF Nos. 18-19.)

### d.  Peek Files a Supplemental § 2255 Motion based on *Taylor*

On June 28, 2022, Peek filed a letter request on the criminal docket to amend his § 2255 motion based on the Supreme Court's decision in *Taylor*. (*See* Crim. No. 15-609, ECF No. 130.) Peek also sought appointment of counsel. (*Id.*)

On July 6, 2022, the Court appointed habeas counsel to represent Peek and directed the parties to provide briefing on Peek's *Taylor* claim. (*Id.* at ECF No. 132, 133.) The parties concluded their initial briefing on November 22, 2022. (*See* Civ. No. 20-9747, ECF Nos. 20, 22, 23, 29; *see also* Crim. No. 15-609, ECF No. 141.) On December 1, 2022, the Court appointed habeas counsel to represent Peek in his § 2255 proceedings. (Civ. No. 20-9747, ECF No. 30.)

On November 23, 2023, the Court denied the government's motion to dismiss Peek's ineffective assistance of counsel claims against second counsel and provisionally granted Peek's request for equitable tolling. (ECF Nos. 49-50.) The Court directed the government to file an answer regarding the ineffective assistance claims and directed the parties to supplement their briefing on the *Taylor* claim. (*See id.*)

On June 24, 2024, after the government filed its answer, Peek submitted a declaration withdrawing his ineffective assistance claims against second counsel. (Civ. No. 20-9747, ECF No. 64-1; *see also* ECF No. 64). The Court deems these ineffective assistance claims withdrawn and does not address the withdrawn claims in this opinion. Peek did not withdraw his *Taylor* claim, which the Court addresses below.

## II.    STANDARD OF REVIEW

Under § 2255, a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "The statute's language 'is somewhat lacking in precision' but 'afford[s] federal prisoners a remedy identical in scope to federal habeas corpus [under 28 U.S.C. § 2254].'" *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). "The scope of relief does not reach 'every asserted error of law.'" *Id.* (quoting *Davis*, 417 U.S. at 346). Instead, § 2255 provides relief for jurisdictional and constitutional claims, as well as limited types of nonconstitutional claims, such as sentencing errors that violate fair procedure or amount to a miscarriage of justice. *See id.* (citations omitted). A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Bentley*, 49 F.4th 275, 283 (3d Cir. 2022). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

As a "general rule . . . claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Frady*, 456 U.S. at 167-68), or actual innocence. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). "In the habeas context, [courts] allow a party to overcome their 'procedural default' if it can show either cause and prejudice or actual innocence." *United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022).

13

### III.   <u>DISCUSSION</u>

#### a. Peek's *Taylor* Claim is Procedurally Defaulted

Peek's firearm conviction under 18 U.S.C. § 924(c)(1)(A)(ii) carries a seven-year mandatory consecutive sentence and is predicated on his conviction for attempted bank robbery with a dangerous weapon under 18 U.S.C. §§ 2113(a), (d). Peek argues that his firearm conviction must be vacated in light of the Supreme Court's decision in *Taylor*, which held that a different crime—attempted Hobbs Act robbery—is not a valid predicate for a § 924(c) conviction. *See* 596 U.S. at 860.

The government first argues that Peek's *Taylor* claim is procedurally defaulted. When a petitioner fails to raise an alleged error on appeal, he must demonstrate cause for his failure to raise it and actual prejudice resulting from that omission. *See United States v. Pelullo*, 399 F.3d 197, 220-21 (3d Cir. 2005) (citing *Frady*, 456 U.S. at 167). To prove cause, a petitioner must demonstrate that there was "some external impediment preventing [his] counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A showing of prejudice requires a petitioner to establish that the procedural default "worked to his actual and substantial disadvantage." *Murray*, 477 U.S. at 494 (quoting *Frady*, 456 U.S. at 170).

Peek filed his pro se supplemental § 2255 motion shortly after the Supreme Court's decision in *Taylor*. Even if the Court assumes that Peek can establish cause for his procedural default, he fails to show prejudice or actual innocence because, as explained below, attempted bank robbery with a dangerous weapon under 18 U.S.C. § 2113(d) remains a valid § 924(c) predicate after *Taylor*.

**b. Attempted Bank Robbery under § 2213(d) Remains a Valid § 924(c) Predicate after *Taylor***

"The armed-bank-robbery statute punishes 'use of a dangerous weapon or device' while committing or attempting to commit bank robbery or another crime under § 2113(a) (or bank larceny under § 2113(b))." *United States v. Jordan*, 96 F.4th 584, 588 (3d Cir. 2024) (quoting § 2113(d)). And "[t]he gun-crime statute punishes "any person who, during and in relation to any crime of violence . . . uses or carries a firearm." *Id.* (quoting § 924(c)(1)(A)).

Under § 924(c), a crime of violence is defined as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)–(B). Courts refer to § 924(c)(3)(A) as the "elements clause" and § 924(c)(3)(B) as the "residual clause."

In *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court invalidated the residual clause as unconstitutionally vague. After *Davis*, to qualify as a crime of violence, a predicate crime must satisfy the "elements clause" of § 924(c). Under that clause, a predicate must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Subsequently, in *United States v. Taylor*, 596 U.S. at 851, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)'s elements clause. To convict a defendant of Hobbs Act robbery, the government must prove beyond a reasonable doubt that the defendant engaged in "the unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force." 18 U.S.C. § 1951(b). The Supreme Court held that attempted Hobbs Act robbery can be committed

by completing a "substantial step" toward that end. *Id.* at 850-51 (citing 18 U.S.C. § 1951(b) and *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). Under federal law, a substantial step need not be violent. *Id.* at 851. Thus, a conviction for attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause because "it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." 596 U.S. at 851.

Peek and the government disagree about whether Peek's § 924(c) conviction, which is predicated on his conviction for attempted bank robbery with a dangerous weapon under § 2113(d), remains valid under the elements clause. To answer that question, this Court applies "the categorical approach" to assess "whether the elements of § 2113(d) 'match the elements of' § 924(c)." *Jordan*, 96 F.4th at 589 (quoting *Mathis v. United States*, 579 U.S. 500, 504 (2016)). Section 2113(d) is a crime of violence only if its elements are the same as, or narrower than, those required by § 924(c)'s elements clause. *Id.* If the least culpable conduct under the statute does not involve the use or threat of force, the offense does not qualify as a crime of violence. This is true "even if the defendant's actual conduct (i.e., the facts of the crime)" involved the use or threat of physical force. *Mathis*, 579 U.S. at 504 (applying same approach for 18 U.S.C. § 924(e)(1)).

"When a statute is indivisible, defining a single crime," courts use the "classic categorical approach." *Jordan*, 96 F.4th at 589 (citing *Mathis*, 579 U.S. at 504–05). Courts, however, "do not always try to match all the elements in a statute." *See id.* Where a statute is divisible, defining more than one crime, court "use the modified categorical approach" and "look to 'a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" *Id.* at 589-90 (citing *Mathis*, 579 U.S. at 505–06). Courts then use the that specific version of the crime to compare

elements. *Id.* at 590 (citing *Mathis*, 579 U.S. at 506). The Third Circuit held in *Jordan* that a completed armed bank robbery under § 2113(d), like other "nested crimes," is divisible. *See id.* at 593 ("we hold that, as a rule, federal nested crimes that depend on alternative predicate crimes are divisible").

Here, the Court also "appl[ies] the modified categorical approach, looking at the record to figure out "what crime, with what elements," Peek committed.[5]  *Id.* at 593 (citing *Mathis*, 579 U.S. at 505). Based on the indictment, plea agreement, and plea colloquy, it is clear that Peek pleaded guilty in Count 9 to an attempted bank robbery under § 2113(a) with the dangerous weapon enhancement under § 2113 (d), and that crime is the predicate for his § 924(c) conviction in Count 10.

Prior to *Davis* and *Taylor*, the Third Circuit held that a completed armed bank robbery under 18 U.S.C. § 2113(d) is a crime of violence within the meaning of § 924(c)'s elements clause. *See United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018). As the circuit court explained in *Johnson* that "[o]ne cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force." *Id.* at 204.  In *Jordan*, the Third Circuit reaffirmed that holding and also held that a completed unarmed bank robbery under § 2113(a) is a crime of violence. *See* 96 F.4th at 594.

*Johnson* and *Jordan* address completed armed bank robberies, and Peek argues that *Taylor* governs his conviction for attempted bank robbery with a dangerous weapon under § 2113(d).[6]

---

[5] Peek also pleaded guilty to the forced accompaniment enhancement under § 2113(e), and the government argues that this crime is also a valid predicate for his § 924(c) conviction. The Court need not reach this issue, however, because it finds that attempted bank robbery with a dangerous weapon under § 2113(d) is still a valid predicate following the Supreme Court's decision in *Taylor*.

[6] Peek's counsel also argues that pursuant to *Borden v. United States*, 593 U.S. 420 (2021), attempted bank robbery with a dangerous weapon is not a crime of violence because it can be committed recklessly. To the extent Peek argues that *Borden* entitles him to relief, the Court

*Taylor*. To prove attempted Hobbs Act robbery, the Government must prove that: "(1) the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Taylor*, 596 U.S. at 851. Unlike Hobbs Act robbery, however, § 2113(d) is a nested statute and includes a separate element that criminalizes assaulting or jeopardizing the life of any person with a dangerous weapon. *See* 18 U.S.C. § 2113(d).

According to Peek, a defendant is guilty of attempted bank robbery with a dangerous weapon under § 2113(d) even if he or she never assaults or jeopardizes the life of any person with a dangerous weapon and only takes a substantial step toward that element. Peek relies on *United States v. Garner*, 915 F.3d 167 (3d Cir. 2019), which held that attempted bank robbery requires only intent plus a "substantial step" toward commission of the crime. Likewise, in a nonprecedential decision, *United States v. Sawyer*, the Third Circuit stated that a conviction under § 2113(d) requires that the defendant act "with intent to commit armed bank robbery" and take "a substantial step toward carrying out that intent." 39 F. App'x 785, 787 (3d Cir. 2002).

In *Garner*, the defendant was indicted on charges of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, attempted bank robbery in violation of 18 U.S.C. § 2113(a), possession of a firearm in furtherance of a crime of violence, and aiding and abetting that crime in violation of 18 U.S.C. §§ 2 & 924(c)(1). He was convicted on all charges after a jury trial.

---

declines to consider this claim because Peek did not properly raise it. Moreover, the claim is untimely. The Supreme Court decided *Borden* on June 10, 2021. Pursuant to 28 U.S.C. § 2255(f)(3), Peek was required to raise a claim based on that decision no later than June 10, 2022. He did not raise that claim in his initial July 23, 2022 submission. Moreover, the Third Circuit rejected a similar challenge in *Jordan* and held that "an armed bank robbery (a § 2113(d) violation predicated on § 2113(a)'s first paragraph) always involves purposely or knowingly using, attempting to use, or threatening to use force." *See Jordan*, 96 F.4th at 594-95 (explaining that "*Johnson's* holding survives *Borden*").

*Id.* at 169. On appeal, he challenged the sufficiency of the evidence, and the Third Circuit applied the federal common law standard to the attempted bank robbery:

> To prevail on a charge of attempted bank robbery, the Government had to prove that (1) Garner had the requisite intent to commit armed bank robbery; and (2) he "performed an act amounting to a 'substantial step' toward the commission of that crime." *United States v. Hsu*, 155 F.3d 189, 202 (3d Cir. 1998); *see also* Model Penal Code § 5.01(1)(c).

915 F.3d at 170. This year, two district courts in this circuit have held that *Garner* controls whether attempted bank robbery with a dangerous weapon is a valid predicate for a § 924(c) offense. *See United States v. Gordon*, Crim. No. 99-348-2, 2024 WL 1585919, at *1-2 (E.D. Pa. Apr. 11, 2024); *United States v. Humbert*, Crim. No. 04-192-02, 2024 WL 2883657, at 6-8 (E.D. Pa. Jun. 7, 2024) (finding that the *Garner* applied the common law definition to attempted bank robbery under § 2113(d)).

The government contends that *Garner* does not apply, and the Court agrees. The defendant in *Garner* was charged with conspiracy to commit armed bank robbery under 18 U.S.C. § 371 and unarmed attempted bank robbery under 18 U.S.C. § 2113(a). Although a firearm was recovered from defendant's backpack, he was not charged with attempted bank robbery with a dangerous weapon under § 2113(d). *See Garner*, 915 F.3d at 169. Moreover, Garner did not argue that his weapons offense was invalid because attempted bank robbery is not categorically a crime of violence; instead, the Third Circuit rejected his "sole argument" that his § 924(c) conviction was invalid because he did not actually commit the underlying crime. *Id.* at 171.

One district court in this circuit has found that *Garner's* adoption of the common law approach for attempted bank robberies under § 2113(a) does not control whether attempted bank robbery under § 2113(d) is a valid § 924(c) predicate. In *United States v. Bolden*, Crim. No. 12-359, Civ. No. 16-2435, 2024 WL 4249137, at *3 (E.D. Pa., Jul. 23, 2024), the district court found

that "*Garner* plainly did not address the present issue—whether attempt under § 2113(d) constitutes a § 924(c) predicate crime of violence—and is thus not binding here." (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("A case is not binding precedent on a point not raised by the parties or discussed in the Court's opinion.")). Here as well the *Garner* decision is not on point because it does not address the same statutory provision or legal issue.

Absent binding precedent on this issue, the most natural reading of § 2113(d) is that a bank robbery under § 2113(d), whether completed or attempted, always requires that the defendant assault or jeopardize the life of any person with a dangerous weapon. This is true even if an attempted robbery under § 2113(a) requires only a substantial step toward the force element. The relevant portion of § 2113(a) criminalizes robbery by force, violence, or intimidation, and reads as follows:

> Whoever by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another; . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association. . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

As explained by the district court in *Bolden*: "Given the structure of § 2113(a), it is not clear whether "by force and violence, or by intimidation"—which directly precedes "takes"— modifies "attempts to take." *Bolden*, 2024 WL 4249137, at *3. In contrast, § 2113(d) enhances the penalty for using a dangerous weapon during a robbery <u>or</u> an attempted robbery, and reads as follows:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d). A plain reading of § 2113 (d) criminalizes assaulting or jeopardizing the life of any person with a dangerous weapon while committing or attempting to commit a crime listed in subsection §§ 2113(a) or (b). *See Bolden*, 2024 WL 4249137, at *3 ("given the structure of § 2113(d), it is difficult to understand how 'assaults any person, or put in jeopardy the life of any person by the use of a dangerous weapon or device'—which directly follows 'attempting to commit'—could apply to 'committing' but not to 'attempting to commit'"); *see also Humbert*, 2024 WL 2883657 at 6 n.6 (noting that the government had a "strong textual argument" that attempted bank robbery with a dangerous weapon under § 2113(d) is a crime of violence even if attempted bank robbery under § 2113(a) is not, but nevertheless finding *Garner* controlling). Thus, as the government argues, even if an attempted bank robbery under § 2113(a) only requires a substantial step and does not meet the elements clause, an attempted bank robbery with a dangerous weapon under § 2113(d) always requires the use, attempted use, or threatened use of force.

In *Williams v. United States*, No. 23-5975, 2024 WL 1911097, at *4 (6th Cir. Apr. 17, 2024), the Sixth Circuit held in an unpublished opinion that a conviction under § 2113(d) "requires the government to prove that the defendant assaulted or put in jeopardy the life of another by the use of a dangerous weapon or device—regardless of whether the bank robbery was attempted or completed." This Court agrees, and notes that in reaching this conclusion, the Sixth Circuit relied on the Third Circuit's decision in *Johnson*, 899 F.3d at 204, and found that that "[o]ne cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force." *See Williams*, 2024 WL 1911097, at *4 (citing *id.*).

There is an added wrinkle. The district court in *Bolden* determined that attempted bank robbery with a dangerous weapon is not a categorical match to 924(c)'s elements clause because the elements clause requires "the use, attempted use, or threatened use of physical force against

the person or property of <u>another</u>." 18 U.S.C. § 924(c). *See id.* at *4 (emphasis added in *Bolden*). The petitioner in *Bolden* had argued that the phrase "any person" in § 2113(d) sweeps more broadly than the elements clause and includes situations where the bank robber's use of a firearm jeopardizes his or her own life.

The petitioner in *Jordan* also raised this argument, positing that a bank robber could violate § 2113(d) by threatening to shoot himself during a bank robbery. (*See* 3d Cir. No. 22-2153, Dkt. No. 30 at 37.) The Third Circuit appears to acknowledge that "any person" in § 2113(d) differs from "the person . . . of another." *See Jordan*, 96 F.4th at 594. The circuit court, however, did not reach the merits of that argument because the petitioner in that case committed a completed armed bank robbery, and the version of the crime he committed has as an element the use of force against "another" under § 2113(a). *See id.* at 594 ("So whether or not § 2113(d) as a whole sweeps more broadly than § 2113(a), the specific offense that Jordan committed does not. That offense always involves the use or threatened use of force against another person.").

Peek's firearm conviction would be invalid if the "any person" language of § 2113(d) criminalizes jeopardizing his own life with a dangerous weapon. The Court, however, is unconvinced that the "any person" language of § 2113(d) sweeps so broadly as to include a scenario where a defendant threatens to shoot himself or otherwise jeopardizes his life with a dangerous weapon. From the outset, construing "any person" to include the defendant is an awkward reading of the statutory language, which criminalizes (1) assaulting or (2) jeopardizing the life of any person with a dangerous weapon. Because a person cannot assault himself, it logically follows that both types of conduct must be directed at other persons. Moreover, it is farfetched that a bank robber would threaten to kill himself with a dangerous weapon during a bank robbery or attempted bank robbery. As a practical matter,  the bank robber's conduct in that

scenario, even if ostensibly a threat against himself, would also jeopardize others in the bank. Reading "any person" to include the bank robber, though imaginative, is simply implausible. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (noting that "our focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply 'legal imagination'" to the offense). The Court, therefore, rejects this argument to the extent Peek raises it.

For these reasons, the Court finds that attempted bank robbery with a dangerous weapon in violation of § 2113(d) is categorically a crime of violence and is a valid predicate under § 924(c). Because Peek cannot establish prejudice or actual innocence to overcome the procedural default of his *Taylor* claim, the Court denies Peek's supplemental § 2255 motion.

### c.  The Court Grants a Certificate of Appealability

Although the Court denies Peek's *Taylor* claim, it grants a certificate of appealability ("COA"). A petitioner may not appeal a final order in a § 2255 proceeding unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'" *Welch*, 578 U.S. at 127 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the Third Circuit, "[t]his showing 'is satisfied even if the claim is only debatably constitutional.'" *Clark v. United States*, 76 F.4th 206, 212 (3d Cir. 2023) (quoting *United States v. Doe*, 810 F.3d 132, 145 (3d Cir. 2015)).

As indicated above, courts in this circuit have held in nonbinding decisions that a § 924(c) conviction predicated on an attempted bank robbery with a dangerous weapon under § 2113(d) is not categorically a crime of violence. *See Gordon*, 2024 WL 1585919, at *1-2; *Humbert*, 2024 WL

2883657, at 6-8; *Bolden*, 2024 WL 4249137, at *4; *see also Washington*, 2023 WL 2945902, at *2 (finding that certificate of appealability was warranted to consider whether unarmed attempted bank robbery under § 2113(a) was still a crime of violence following *Taylor*). Although this Court finds that attempted bank robbery with a dangerous weapon under § 2113(d) is categorically a crime of violence and is a valid predicate for a § 924(c) conviction, reasonable jurists could debate whether Peek's § 924(c) conviction violates his constitutional rights. Therefore, the Court denies the motion but grants a certificate of appealability.

## IV.  <u>CONCLUSION</u>

For the reasons set forth in this Opinion, the Court denies Peek's supplemental § 2255 motion and grants a certificate of appealability. An appropriate Order follows.

<u>*s/Katharine S. Hayden*</u>
KATHARINE S. HAYDEN
United States District Judge

DATED: December 23, 2024.

24